UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRON IT CONSULTING, INC.,
AND AARON TRUMLEY

        Plaintiffs,        CASE NO. 19-10658
                             HON. DENISE PAGE HOOD

v.

FEDEX TRADE NETWORKS,

        Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [#14]**

**I.    BACKGROUND**

**A. Procedural Background**

On or about January 8, 2019, Plaintiffs Tron IT Consulting ("Tron") and Aaron Trumley ("Trumley") (collectively "Plaintiffs") filed a Complaint against Defendant Federal Express Corporation ("FedEx") in Michigan's 7th Judicial Circuit Court in Genesee County. On March 5, 2019, FedEx timely filed a Notice of Removal to federal court. [ECF No. 1] On May 14, 2019, Tron filed an Amended Complaint [ECF No. 7] alleging Negligence (Count I), Breach of Contract (Count II), Intentional Interference with Business and Contractual

1

Relations (Count III), and Assault and Battery (Count IV). FedEx filed an Answer to the Amended Complaint [ECF No. 8] on May 24, 2019.

The instant matter is before the Court on FedEx's Motion for Partial Summary Judgment on Tron's Intentional Interference with a Business Relationship claim, filed on November 22, 2019. [ECF No. 14] Tron filed an untimely Response on January 7, 2020. [ECF No. 16] FedEx filed a Reply on January 16, 2020. In its Reply, FedEx requests that the Court strike Tron's Response as untimely, or alternatively require that Tron submit documentation supporting excusable neglect. The Court finds that time is the only factor that may have prejudiced FedEx and that concern was allayed when FedEx filed a Reply with its Request to Strike.

### B. Factual Background

In April 2012, Trumley formed Tron, which manufactures and sells Star Wars replica merchandise, such as light sabers,[1] under a d/b/a of "Solo's Hold." [ECF No. 167, Pg.ID 166-67] Tron orders the component parts for its products from countries around the world, including China. [*Id.* at 167] Tron has used FedEx to send and receive thousands of packages without incident. [*Id.*]

---

[1] The "weapon of a Jedi," as made famous by the major motion picture "Star Wars." *See Star Wars Databank*, https://www.starwars.com/databank/lightsaber.

In early 2017, Solo's Hold ordered approximately $59,000 in parts from its Chinese supplier, Holy Precision. [*Id.*] On or about February 26, 2018, Holy Precision arranged for Solo's Hold's order to be delivered via FedEx to its facility in Genesee County, Michigan. In March 2018, FedEx delivered the original order to Solo's Hold. The boxes were "dented, smashed and torn completely open." [*Id.*] One of the boxes appeared to have been "run-over" and displayed tire tracks. [*Id.* at 168] FedEx did not notify Tron of any incidents that may have caused damage to the boxes. [*Id.*] After conferring with Holy Precision, Tron indicates that the packages were shipped according to FedEx's specifications. [*Id.* at 167] Throughout the course of Tron's business, it has never made a claim for damaged products. [*Id.*]

In order to appropriately fulfill its fastidious customer demands, Solo's Hold had to expedite a re-order ("First Re-order") of approximately $14,000 in parts from Holy Precision. [*Id.* at 168] The First Re-order was delivered on or about March 21, 2018. [*Id.*] One of the First Re-order boxes also appeared damaged. [*Id.*] Given the box's appearance, Trumley requested that the FedEx driver scan and mark the box as "damaged." [*Id.*] The driver refused Trumley's request and insisted that Trumley sign for the package. [*Id.*]

Following this exchange, the driver "battered and assaulted" Trumley and attempted to "rip the First Re-Order box from [Trumley's] possession." [*Id.*]

3

Trumley immediately called the Gaines Township Police and filed a criminal complaint. [*Id.*]

Upon inspection, "100% of the [First Re-order] parts" were damaged and unusable. In August 2018, Trumley filed an expedited replacement order ("Second Re-order") for component parts from Holy Precision costing approximately $7,500. [*Id.* at 169] The Second Re-order was delivered successfully by another carrier. [*Id.*] All of the box's contents were packaged and wrapped in the same or similar manner as the first two shipments.

Following Trumley's incident with the FedEx driver, FedEx cancelled all of Solo's Hold's scheduled deliveries. [*Id.*] The scheduled deliveries were cancelled without notice and resulted in the deliveries being returned to sender, with some locations as far as China. [*Id.*]

Trumley was contacted by FedEx Security after the incident with the driver. [*Id.*] That conversation revealed that FedEx had a history of complaints concerning Trumley, that disputes about damages should be "handled like men," and that all of Solo's Hold's deliveries would be cancelled or suspended until Trumley abandoned his criminal charges against the FedEx driver. [*Id.*] Trumley later called FedEx's customer service department. [*Id.* at 170] A customer service representative informed Trumley that the security officer, Rod Haley, cancelled Solo's Holds orders and not FedEx's business department. [*Id.* at 169-170] FedEx

4

stated Solo's Hold's orders were cancelled because Trumley alleged that he was assaulted by an employee, not because of any wrongdoing on Trumley's part. [*Id.* at 170] On October 20, 2018, FedEx suspended Trumley's shipping account. [*Id.*]

## II. LEGAL ANALYSIS

### A. Standards of Review

Rule 56(a) of the Federal Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view admissible evidence in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and

5

on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B. Montreal Convention

Under the Supremacy Clause, "treaties are the 'supreme Law of the Land.'" *Doe v. Etihad Airways, P.J.S.C.*, 870 F.3d 406, 417 (6th Cir. 2017) (quoting U.S. Const. art. VI, cl. 2). The Warsaw Convention is "equal in stature and force to the domestic laws of the United States." *Sulewski v. Fed. Exp. Corp.*, 933 F.2d 180, 182 (2d Cir. 1991) (internal quotations omitted).

FedEx asserts that the Montreal Convention of 1999, which exclusively governs claims for air cargo damages, governs this case. *El Al Israel Airlines v. Tsui Yuan Tseng*, 525 U.S. 155 (1999). FedEx claims that the Montreal Convention of 1999 replaced and superseded the Warsaw Convention. *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 (2d Cir. 2004). However, the Sixth Circuit maintains that "the Montreal Convention is an entirely new treaty that unifies and replaces the system of liability that derives from the Warsaw Convention" and conducted a de novo textual review of the Montreal Convention in *Etihad Airways*. 870 F.3d at

417 (quoting *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 371 n.4 (2d Cir. 2004)). Using *Etihad Airways* as a guide, this Court will conduct a textual review of the Montreal Convention to determine whether FedEx's extensive case citations referencing the Warsaw Convention are applicable in the instant matter.

In *El Al Israel Airlines*, the Supreme Court determined that the "preemptive effect" of the Warsaw Convention was clear. 525 U.S. at 159. In interpreting Montreal Protocol No. 4, the Court looked to the plain language which provided that "[i]n the carriage of passengers . . . , any action for damages . . . can only be brought subject to the conditions and limits set out in this Convention . . . ." *Id. El Al Israel Airlines* found that Montreal Protocol No. 4, "merely clarifie[d]" and "[did] not alter" the Warsaw Convention's rule of exclusivity. *Id.* at 174.

Although neither the Supreme Court nor the Sixth Circuit have definitively ruled that the Montreal Convention automatically encompasses all of the Warsaw Convention, the plain text is clear. According to the plain text of the Montreal Convention, the treaty "applies to all international carriage of persons, baggage or cargo performed by aircraft for reward." Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, ICAO Doc. 9740, art. I ("Montreal Convention").

*Etihad Airways* instructed that "interpretations of the Warsaw Convention have at least some persuasive value in interpreting parallel provisions of the

7

Montreal Convention." 870 F.3d at 411. *Etihad Airways* can be distinguished because the Sixth Circuit was interpreting the phrase, "upon condition only," which introduced new words, not present in the Warsaw Convention. *Id.* at 414. Although the instant case involves three iterations of what is essentially the same treaty—the Warsaw Convention,[2] Montreal Protocol No. 4,[3] and the Montreal Convention[4]—each version includes the same language establishing the exclusivity of the Treaty.

Article 24 of the Montreal Convention states that "any action for damages . . . founded . . . under [the] Convention . . . can only be brought subject to the conditions and such limits of liability" described by the treaty. Montreal Convention, art. 24. This is the same language that the Supreme Court discussed when it established the preemptive effect of the Warsaw Convention's exclusivity provision in *El Al Israel Airlines*. 525 U.S. at 159. The Court finds that the force is with the Montreal Convention and it is applicable in the instant case. FedEx's authority referencing the Warsaw Convention refers to parallel articles that merely update the Warsaw Convention rather than change its effect or scope.

---

[2] *See* Paul Stephen Dempsey, *International Air Cargo & Baggage Liability and the Tower of Babel*, 36 Geo. Wash. Int'l L. Rev. 239, 240 (2004) (discussing the motives behind the original Warsaw Convention).
[3] *See id*. at 261 (explaining that the Montreal Protocol No. 4 amended the Warsaw Convention).
[4] *See id.* at 241-42 ("[T]he Montreal Convention of 1999 will re-establish the international legal uniformity the Warsaw Convention of 1929 sought to achieve.").

### 1. First Shipment

FedEx argues that since China and the United States are both signatories of the Montreal Convention, it must govern Tron's claims. FedEx asserts that its liability for the first shipment is limited to $26.13 per kilogram as detailed in the Montreal Convention. *See Chubb Ins. Co. of Eur. S.A. v. Menlo Worldwide Forwarding, Inc.*, 634 F.3d 1023, 1026 (9th Cir. 2011) ("Other Articles establish limits on a carrier's liability for damage, providing, for example, that compensation for loss of cargo cannot exceed a specified amount per kilogram.").

The Montreal Convention states that "the liability of the carrier in the case of destruction loss, damage or delay is limited to a sum of 19 Special Drawing Rights per kilogramme, unless" the party "made a special declaration of interest." Montreal Convention, art. 22(3). FedEx asserts that Tron failed to declare a value for carriage for the first shipment. FedEx then uses the designated formula to determine that, if FedEx is found liable, then Tron's recovery is limited to $5,878.13.[5] *See Chips Plus, Inc. v. Fed. Express Corp.*, 281 F. Supp. 2d 758 (E.D. Pa. 2003) ("[T]he court concludes that, under Article 22(2)(b) of the Amended

---

[5] FedEx used the international table provided by the Montreal Convention to determine that the United States' Special Drawing Right value was $1.375 as of November 20, 2019. FedEx then multiplied $1.375 by 19, which was the number specified in the Convention. This exercise yielded a total of $26.13. Since the entire shipment weighed 225 kilograms, FedEx multiplied 225 by $26.13. This equation resulted in the $5,878.13 total. [ECF No. 14-1, Pg.ID 121]

Warsaw Convention, plaintiff's recovery against FedEx is limited to the value of seventeen SDRs-times fifty-seven (the weight of the shipment in kilograms as indicated on the air waybill.")); *see also Vigilant Ins. Co. v. World Courier, Inc.*, 2008 U.S. Dist. LEXIS 44570 (S.D.N.Y. 2008) ("Under Article 22(3) of the Montreal Convention, plaintiff's recovery is limited to Seventeen Special Drawing Rights, or $298.08.").

Tron does not dispute the applicability of the Montreal Convention. [ECF No. 16, Pg.ID 162] However, Tron argues that the Montreal Convention does not govern its specific claims because FedEx's actions were either intentional or grossly negligent. Tron asserts that Article 22 of the Convention supports its argument. Article 22 of the Montreal Convention states that the Convention's limit of damages is inapplicable when intentional or reckless acts are involved. The relevant provision of Article 22 provides:

> 5. The foregoing provisions of paragraphs 1 and 2 of this Article shall not apply if it is proved that the damage resulted from an act or omission of the carrier, its servants or agents, done with intent to cause damage or recklessly and with knowledge that damage would probably result.

Article 22(5).

Tron refers to Trumley's declaration to establish that both shipments were caused by FedEx's intentional acts, or gross negligence, at the least. [ECF No. 16, Pg.ID 168] Tron asserts that it is "crazy and unlikely" that a majority of a shipment

10

would be damaged in a manner that indicates intentional damage. [*Id.*] Tron argues that the presence of "tire tracks over one or more boxes" is enough evidence to support reckless or intentional acts. [*Id.* at 164] Viewing the facts in favor of Tron, the Court finds that Trumley's declaration and deposition are sufficient to show that there is no genuine issue of fact that Trumley's shipment was recklessly handled and that damages incurred.

FedEx argues that Tron misstates Article 22(5)—which suspends the Convention's rules in certain situations involving damages from intentional and reckless acts—by incorrectly applying it to Article 22(3). FedEx argues that Article 22(3) controls the instant matter because cargo is involved. FedEx explains that Article 22(1) only governs *passenger* delays and that Article 22(2) governs the "destruction, loss, damage, or delay" of passenger *baggage*. *See* Article 22(1) (discussing delay "in the carriage of persons"); *see also* Article 22(2) (discussing "[i]n the carriage of baggage"). FedEx then cites Article 22(5) to establish that Article 22(5) only applies to paragraphs (1) and (2), which pertain to passenger delays and passenger baggage. Article 22(5) ("The foregoing provisions of paragraphs 1 and 2 of this Article shall not apply . . . ."). Since the paragraph governing cargo—paragraph 3—is not included in Article 22(5), FedEx asserts that Article 22's exemption for intentional or reckless acts does not apply to cargo.

11

The Court finds that Tron incorrectly applied Article 22(5) to cargo and that FedEx is entitled to summary judgment regarding Tron's first shipment as a matter of law. The Court **GRANTS** FedEx's Motion for Summary Judgment as it pertains to Tron's first shipment and limits FedEx's potential liability for the first shipment to the statutorily configured total of $5,878.13.

2. **Second Shipment**

FedEx further argues that Tron's claim for damages pertaining to the second shipment is barred because Tron failed to satisfy the Montreal Convention's requirement to timely provide FedEx with a written notice of damages. Alternatively, FedEx asks the Court to limit Tron's damages to $1,045.12.[6] Article 31 of the Montreal Convention provides:

> 2. In the case of damage, the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and, at the latest, within . . . fourteen days from the date of receipt in the case of cargo. In the case of delay the complaint must be made at the latest within twenty-one days from the date on which the baggage or cargo have been placed at his or her disposal.
>
> 3. Every complaint must be made in writing and given or dispatched within the times aforesaid.
>
> 4. If no complaint is made within the times aforesaid, no action shall lie against the carrier, save in the case of fraud on its part.

---

[6] FedEx reached this amount using the same formula referenced in the first shipment. Since the second shipment weighed 40 kilograms, the total amount of damages would equal $1,045.12 (multiplying 40 by $26.13).

FedEx claims that Tron did not meet the 14-day notice required by the Montreal Convention or FedEx's more generous deadline of 21 days and never sent FedEx a written notice of loss of damage. [ECF No. 14, Pg.ID 111] FedEx then extensively cites cases from several districts and circuits to illustrate the argument that timely notice for claims under the Montreal Convention is "virtually universal." *See, e.g.*, *Hitachi Data Systems v. U.P.S.*, 76 F.3d 276, 278 (9th Cir. 1996) ("If a written notice of claim is not tendered to the carrier within fourteen days, the courts unanimously agree that future legal actions are barred.").

The treaty is clear, "[i]f no complaint is made within the [timeframe], no action shall lie . . . save in the case of fraud. . . ." The caselaw is also clear; absent evidence of fraud, failure to comply with the Convention's written notice requirements bars recovery. The Court **GRANTS** FedEx's Motion for Summary Judgment as it pertains to damages from Tron's second shipment. Tron did not comply with the Montreal Convention's notice requirements. And as a matter of law, the Court must **DISMISS** Tron's claim for damages from the second shipment.

The Court notes that there are no questions of material fact concerning potential fraud on the part of FedEx. Tron has not submitted any evidence of fraud on FedEx's part, nor responded to FedEx's claim that Tron failed to satisfy the notice requirements. A plaintiff's failure to address a claim in response to a motion

for summary judgment on that claim "demonstrates abandonment and waiver of the claim." *Crampton v. Kroger Co.*, 213 F. Supp. 3d 910, 913 (E.D. Mich. 2016); *see also Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."). The Court **GRANTS** FedEx's Motion for Summary Judgment as it pertains to Tron's damages from the second shipment.

### C. Airline Deregulation Act

Although FedEx contends that the Montreal Convention governs all of Tron's claims, FedEx alternatively contends that the Airline Deregulation Act ("ADA") preempts Tron's state-law tort claim of intentional interference with business relations. Since the Court grants FedEx's Motion for Summary Judgment on the merits concerning the Montreal Convention, the Court need not discuss the parties' arguments about the ADA.

### D. Intentional Interference with Business Relations

FedEx also argues that, even if the Court finds that the ADA does not preempt Tron's state-law tort claim, Tron's claim fails under Michigan law. Since the Court grants FedEx's Motion for Summary Judgment on the merits concerning the Montreal Convention, the Court need not discuss FedEx's arguments about the ADA.

## III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that FedEx's Motion for Partial Summary Judgment [ECF No. 14] on Tron's claim for Intentional Interference with a Business and Contractual Relationship is **GRANTED**, and potential damages from the first shipment are limited to $5,878.13. The claim regarding the second shipment is **DISMISSED**.

DATED: November 30, 2020

s/Denise Page Hood
Chief Judge, United States District